# 25-76(L), 25-524(XAP)

## In the
## United States Court of Appeals
## For the Second Circuit
✝

**Edward Waters, Jr., Administrator of the Estate of Edward James Waters,**
*Plaintiff–Appellee, Cross-Appellant*

v.

**Pierre Kory, M.D.,**
*Defendant–Appellant, Cross-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR DEFENDANT-APPELLANT

*Attorney for Defendant-Appellant:*

STEVEN M. WARSHAWSKY
THE WARSHAWSKY LAW FIRM
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
T: (914) 864-3353
E: smw@warshawskylawfirm.com

## <u>TABLE OF CONTENTS</u>

Table of Contents ...................................................................... i

Table of Authorities................................................................. iii

Jurisdictional Statement.......................................................... 1

Question Presented and Summary of Argument ................................ 4

Statement of the Case .............................................................. 6

   A.  Nature of the Case ........................................................ 6

   B.  Statement of Facts ........................................................ 7

   C.  Proceedings Below........................................................ 11

Standard of Review ................................................................ 12

Argument............................................................................. 13

   A.  The Federal PREP Act ................................................. 13

      1.  PREP Act Background........................................... 13

      2.  PREP Act Immunity ............................................. 14

   B.  Dr. Kory Is Entitled To PREP Act Immunity "From Suit And Liability" For His Treatment Of Mr. Waters For COVID-19 ............................................................. 18

      1.  Dr. Kory is a "covered person" under the PREP Act's immunity provision................................................ 18

2. Dr. Kory prescribed "covered countermeasures" to Mr. Waters........................................................... 22

3. Plaintiff alleges a "causal relationship" between Mr. Waters' injury and death and his use of the covered countermeasures ...................................... 24

4. Dr. Kory is entitled to PREP Act immunity "from suit and liability" in this case ...................................... 32

Conclusion ......................................................... 33

Certificate of Compliance ................................... 34

# TABLE OF AUTHORITIES

## Cases

*Ashley v. Anonymous Physician 1,* No. 23A-CT-2849,
245 N.E.3d 658 (Ind. Ct. of App. Sept. 11, 2024) (unpub.) ...............31

*Blue Ridge Investments, LLC v. Republic of Argentina,*
735 F.3d 72 (2d Cir. 2013) .....................................................................2

*Bostock v. Clayton County, Georgia,* 590 U.S. 644 (2020) ......................29

*Burrage v. United States,* 571 U.S. 204 (2014) .......................................28

*Cannon v. Watermark Retirement Communities, Inc.,*
45 F.4th 137 (D.C. Cir. 2022).........................................................13,17

*Coventry Health Care of Missouri, Inc. v. Nevils,* 581 U.S. 87 (2017)....30

*Cowen v. Walgreen Co.,* No. 22-CV-157-TCK, 2022 WL 17640208
(N.D. Okla. Dec. 13, 2022) ...................................................................31

*Estate of Maglioli v. Alliance HC holdings LLC,*
16 F.4th 393 (3d Cir. 2021)..................................................................13

*Gingras v. Think Finance, Inc.,* 922 F.3d 112 (2d Cir. 2019)..................2

*Goins v. Saint Elizabeth Med. Ctr., Inc.,* No. 22-6070,
2024 WL 229568 (6th Cir. Jan. 22, 2024) ...........................................3

*Grajales v. Comm'r of Internal Revenue,* 47 F.4th 58 (2d Cir. 2022) .......5

*Hampton v. California*, 83 F.4th 754 (9th Cir. 2023)....................3,23,24

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000)...................................................................................29

*Harvey v. Permanent Mission of Republic of Sierra Leone to United
Nations*, 97 F.4th 70 (2d Cir. 2024)....................................................12

*Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023) ..... 15

*In re PB Life & Annuity Co., Ltd.,* No. 23-1219(L),
    2024 WL 2972718 (2d Cir. June 13, 2024) ........................................... 2

*Jones v. Parmley,* 465 F.3d 46 (2d Cir. 2006) ...................................... 2

*Mills v. Hartford Healthcare Corp.*, 347 Conn. 524 (2023) ................... 30

*M.T. ex rel. M.K. v. Walmart Stores, Inc.*, 528 P.3d 1067
    (Kan. App. 2023) ............................................................................. 31

*Pratt v. JACC Healthcare Center of Norwich LLC*, No. 3:22-cv-566
    (VAB), 2022 WL16855976 (D. Conn. Nov. 10, 2022) ........................ 17

*Sabir v. Williams*, 52 F.4th 51 (2d Cir. 2022) ...................................... 12

*Solomon v. St. Joseph Hosp.*, 62 F.4th 54 (2d Cir. 2023) .............. *passim*

*Storment v. Walgreen Co.,* No. 21-CV-898-MIS,
    2022 WL 2966607 (D.N.M. July 27, 2022) ........................................ 31

*Univ. of Texas Southwestern Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) .......................................................................... 27

## Statutes, Regulations, and Rules

42 U.S.C. § 247d-6d ............................................................................ 13

42 U.S.C. § 247d-6d(a)(1) ............................................................ *passim*

42 U.S.C. § 247d-6d(a)(2)(A) ............................................................. 16

42 U.S.C. § 247d-6d(a)(2)(B) ....................................................... *passim*

42 U.S.C. § 247d-6d(b)(8)(A) ............................................................. 17

42 U.S.C. § 247d-6d(c) ...................................................................... 16

42 U.S.C. § 247d-6d(c)(1)(B) ............................................................. 16

42 U.S.C. § 247d-6d(d)(1) ........................................................ 16

42 U.S.C. § 247d-6d(i)(1) ........................................................ 14

42 U.S.C. § 247d-6d(i)(2)(B)(iv) ............................................. 19

42 U.S.C. § 247d-6d(i)(8)(A) ................................................... 19

42 U.S.C. § 247d-6e ............................................................... 13

42 U.S.C. § 247d-6e(a) ........................................................... 16

42 U.S.C. § 247d-6e(d)(1) ....................................................... 16

88 Fed. Reg. 30769 (May 12, 2023) ........................................ 14

85 Fed. Reg. 15198 (Mar. 17, 2020) ................................. 14,23

Conn. Gen. Stat. § 20-9(b)(5)........................................ 19,20,21

## **Other Authorities**

Black's Law Dictionary (12th Ed. 2024) .................................. 20

# JURISDICTIONAL STATEMENT

This is an interlocutory appeal from a Memorandum of Decision, entered January 2, 2025, of the U.S. District Court for the District of Connecticut (Kari A. Dooley, D.J.), denying Defendant's motion to dismiss Plaintiff's state law claims for negligence (Count I) and lack of informed consent (Count II), which was asserted on grounds that Defendant is immune from suit and liability under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d and 247d-6e. *See* J.A. 102-107.[1]

The district court's decision is found at J.A. 98-109.

The text of the PREP Act is reproduced at J.A. 36-51.

The district court had jurisdiction over this action, which was removed from Connecticut Superior Court, pursuant to 28 U.S.C. § 1332 (diversity), because Plaintiff is a citizen of Connecticut and Defendant is a citizen of Florida and the amount in controversy exceeds $75,000, exclusive of interest and costs.  J.A. 8-10.

---

[1] The district court granted Defendant's motion to dismiss for failure to state a claim with respect to Plaintiff's claim for violation of the Connecticut Unfair Trade Practices Act (Count III).  *See* J.A. 107-109.  This ruling is the subject of Plaintiff's cross-appeal, No. 25-524.

This Court has jurisdiction over this appeal pursuant to the collateral order doctrine, because this is an appeal from the district court's denial as a matter of law (no factual disputes) of Defendant's statutory immunity defense under the PREP Act, which provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." § 247d-6d(a)(1) (J.A. 36).

The PREP Act is analogous to other forms of immunity from suit to which the collateral order doctrine has been applied. *See, e.g., Gingras v. Think Finance, Inc.,* 922 F.3d 112, 119-20 (2d Cir. 2019) (tribal sovereign immunity); *Blue Ridge Investments, LLC v. Republic of Argentina,* 735 F.3d 72, 79-81 (2d Cir. 2013) (foreign sovereign immunity); *Jones v. Parmley,* 465 F.3d 46, 54-55 (2d Cir. 2006) (qualified immunity).

Indeed, this Court applied the collateral order doctrine *sub silentio* to an appeal involving the PREP Act in *Solomon v. St. Joseph Hospital,* 62 F.4th 54, 59 (2d Cir. 2023). *See In re PB Life & Annuity Co., Ltd.,* No. 23-1219(L), 2024 WL 2972718, at *3 (2d Cir. June 13, 2024) (noting

2

that appellants in *Solomon* "properly invoked the collateral order doctrine"). The collateral order doctrine has been applied to appeals involving the PREP Act by the Sixth Circuit and the Ninth Circuit. *See Goins v. Saint Elizabeth Med. Ctr., Inc.,* No. 22-6070, 2024 WL 229568, at *4-5 (6th Cir. Jan. 22, 2024); *Hampton v. California,* 83 F.4th 754, 761-62 (9th Cir. 2023).

Accordingly, Defendant's interlocutory appeal properly is before this Court.

## QUESTION PRESENTED
## AND SUMMARY OF ARGUMENT

Question: Did the district court err when it held as a matter of law that Defendant was not entitled to immunity from suit and liability under the PREP Act with respect to Plaintiff's state law claims for negligence (Count I) and lack of informed consent (Count II), where Plaintiff alleged that Plaintiff's decedent suffered injury and death from a perforated duodenal ulcer caused by high dose corticosteroids prescribed by Defendant to treat Plaintiff's decedent for COVID-19?

Answer: Yes. The district court reached an erroneous decision based on its misunderstanding of the nature and scope of PREP Act immunity, its misapplication of case law under the PREP Act, and its fundamentally flawed conclusion that Plaintiff's allegation that Defendant's failure to prescribe a gastrointestinal prophylaxis along with the high dose corticosteroids was a "distinct and independent cause" of Plaintiff's decedent's injury and death, even though the corticosteroids were prescribed to treat COVID-19. J.A. 105. As demonstrated herein, because Plaintiff's decedent's injury and death "has a causal relationship with the administration to or use by an

4

individual of a covered countermeasure," § 247d-6d(a)(2)(B), Defendant is entitled to statutory immunity under the PREP Act.

This is a case of first impression in this Circuit. Although this Court discussed the PREP Act in *Solomon v. St. Joseph Hospital,* 62 F.4th 54 (2d Cir. 2023), and in other appeals involving the application of the "complete preemption doctrine," to date this Court has not issued any opinions analyzing and applying the substantive immunity provisions under the statute. Moreover, as this Court explained in *Solomon*, "immunity has no bearing on complete preemption, which is a *jurisdictional* doctrine, not a preemption-defense doctrine." *Id.* at 61. This appeal squarely presents a question under the substantive immunity provisions of the PREP Act. Prior case law is of limited value in answering this question, which is a matter of statutory interpretation. *See, e.g., Grajales v. Comm'r of Internal Revenue,* 47 F.4th 58, 62 (2d Cir. 2022) (summarizing principles of statutory interpretation).

5

## STATEMENT OF THE CASE

### A.   Nature of the Case.

This is a wrongful death action initiated on or about March 29, 2024, in the Superior Court of the State of Connecticut, Judicial District of Stamford/Norwalk, and removed to federal district court pursuant to 28 U.S.C. §§ 1441, 1446, on May 12, 2024.  J.A. 2, 7, 14.

The claims in this case arise from Defendant's medical treatment of Plaintiff's decedent for COVID-19 in December 2021.  Specifically, Plaintiff alleges that, as a result of high dose corticosteroids prescribed by Defendant to treat the decedent's COVID-19, the decedent developed a large duodenal ulcer, which perforated and caused his death.  J.A. 75, 90, 94.

In the Amended Complaint, Plaintiff asserts state law causes of action against Defendant for negligence (Count I), lack of informed consent (Count II), and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (Count III).  J.A. 71-80.

Defendant denies any wrongdoing in this case, J.A. 63-64, but exercised his right to file a pre-answer motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  J.A. 3.

6

## B. **Statement of Facts.**

Plaintiff's Amended Complaint, including the attached expert witness statements, provides a detailed chronology of the events in this case. *See* J.A. 71-94. The essential facts, which are assumed to be true for purposes of this appeal, are as follows:

Plaintiff's decedent, Edward James Waters, contracted COVID-19 on or about Thanksgiving Day, November 25, 2021. J.A. 72 (Am. Compl. ¶ 9). Mr. Waters was an independently living 80-year-old man. J.A. 88 (Expert Decl. at 1). Thereafter, Mr. Waters or his family reached out to Defendant, Dr. Pierre Kory, who started treating Mr. Waters for COVID-19 on December 5, 2021. J.A. 72 (Am. Compl. ¶ 11). Dr. Kory's treatment regimen for Mr. Waters included ivermectin (antiparasitic), prednisone (corticosteroid), spironolactone (diuretic), and dutasteride (5-alpha reductase inhibitor), which he prescribed on December 6, 2021. *Id.* ¶ 13. *See also* J.A. 64 (Kory Decl. ¶¶ 7-12). According to the Amended Complaint, Dr. Kory was aware of Mr. Waters' recent use of prednisone. J.A. 72 (Am. Compl. ¶ 12).

On December 12, 2021, Mr. Waters presented to the Stamford Hospital emergency department with increasing shortness of breath.

7

J.A. 73 (Am. Compl. ¶ 14). Mr. Waters was hospitalized from December 12-16, 2021, and was discharged in stable condition. *Id.* ¶ 16. Two days into his hospitalization, Mr. Waters was prescribed Decadron, a corticosteroid. *Id.* ¶ 14. According to the Amended Complaint, while in the hospital, Mr. Waters also was prescribed omeprazole, a proton pump inhibitor, which was intended to be taken until he ended his course of Decadron. *Id.*

On December 18, 2021, Dr. Kory recommended that Mr. Waters resume taking a tapered course of prednisone, following the completion of the Decadron that he had been prescribed at the hospital. J.A. 74 (Am. Compl. ¶ 18). Dr. Kory did not prescribe Mr. Waters a gastrointestinal prophylaxis with a proton pump inhibitor or H2 blocker. *Id.* ¶ 22.

On December 24, 2021, Christmas Eve, Mr. Waters had further improved, was asymptomatic, and was in good spirits celebrating the holiday with his family. *Id.* ¶ 23.

On December 29, 2021, Mr. Waters' daughter called Dr. Kory and reported that Mr. Waters was experiencing worsening abdominal pain beginning two days prior. *Id.* ¶ 24. According to the Amended

8

Complaint, in response to the call, Dr. Kory's only plan was to reduce the prednisone to 20 milligrams per day for 2 days. *Id.*

On December 30, 2021, Mr. Waters was brought by ambulance to Norwalk Hospital emergency department with worsening conditions, and the same day underwent an emergency exploratory laparotomy that found and repaired a 2cm perforated duodenal ulcer. J.A. 74-75 (Am. Compl. ¶¶ 25-26). At the hospital, Mr. Waters tested positive for COVID-19, and his chest x-ray revealed bilateral air space disease compatible with COVID-19 infection. J.A. 89 (Expert Decl. at 2).

Mr. Waters remained hospitalized and his condition continued to decline due to the perforated ulcer. J.A. 75 (Am. Compl. ¶ 27). Mr. Waters died on January 12, 2022, as a result of multiple organ failure. *Id.* ¶ 28.

Plaintiff alleges that "Mr. Waters sustained the above-described injuries and damages as a direct and proximate result of Dr. Kory's negligence . . . ." *Id.* ¶ 29. Plaintiff's expert declaration faults the quality of care that Dr. Kory provided Mr. Waters while treating him for COVID-19, in particular, "[b]y prescribing high dose corticosteroids to this elderly man without consideration of GI protection, Dr. Kory

violated the standard of care to a reasonable degree of medical certainty, by causing a large duodenal ulcer which ultimately led to Mr. Waters' untimely death." J.A. 90 (Expert Decl. at 3). The expert letter attached to the Amended Complaint likewise asserts that "[t]he provision of high dose steroids in acutely ill patients is a known risk factor for the development of peptic ulcer disease" and that "[t]he failure to provide Mr. Waters with a gastrointestinal prophylaxis with a proton pump inhibitor or H2 blocker, when Dr. Kory prescribed high dose steroids, was a substantial factor in Mr. Waters' development and perforation of the large duodenal ulcer, which ultimately led to his death." J.A. 94 (Expert Letter ¶¶ 5, 8).

In sum, Plaintiff's Amended Complaint alleges that Mr. Waters had COVID-19, that he or his family engaged Dr. Kory to treat Mr. Waters for his COVID-19, and that Dr. Kory's treatment of Mr. Waters involved the use of high dose corticosteroids without gastrointestinal prophylaxis, which caused Mr. Waters to suffer a perforated duodenal ulcer that ultimately led to his death.

## C.   Proceedings Below.

On May 15, 2024, following removal from Connecticut Superior Court, Defendant filed a motion to dismiss, J.A. 3, 33, which asserted that Dr. Kory is entitled to immunity "from suit and liability" under the PREP Act, § 247d-6d(a)(1), which immunizes a "covered person" from "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ."  In addition, Defendant argued that Plaintiff's CUTPA claim must be dismissed for the independent reason that CUTPA does not apply to claims of professional negligence, including medical malpractice.  *See generally* J.A. 98-109.

Plaintiff filed his Amended Complaint on July 11, 2024.  J.A. 3, 71.  Plaintiff filed his objection to Defendant's motion to dismiss on July 26, 2024.  J.A. 4, 95.  Defendant filed his reply memorandum on August 8, 2024.  J.A. 4.  Discovery was stayed pending adjudication of the motion.  J.A. 4.  There was no oral argument on the motion.

On January 2, 2025, the Court issued its Memorandum of Decision, granting Defendant's motion with respect to Count III but denying the motion with respect to Counts I and II.  J.A. 4, 98-109.

11

Assuming, without deciding, that Dr. Kory is a covered person and that prednisone is a covered countermeasure under the PREP Act, J.A. 103, the Court held that Counts I and II were not barred by the PREP Act because Dr. Kory's alleged failure to prescribe a proton pump inhibitor or H2 blocker in conjunction with the high dose prednisone was a "distinct and independent cause" of Mr. Waters' death that fell outside the scope of immunity afforded by the PREP Act. J.A. 105. Defendant appeals from this decision.

## STANDARD OF REVIEW

This Court reviews a district court's denial of PREP Act immunity on a motion to dismiss *de novo*, accepting as true the material facts alleged in the complaint and drawing all reasonable inferences in the plaintiff's favor. *See, e.g., Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022) (qualified immunity); *Harvey v. Permanent Mission of Republic of Sierra Leone to United Nations*, 97 F.4th 70, 76 (2d Cir. 2024) (sovereign immunity);

# ARGUMENT

## A.    The Federal PREP Act.

### 1.    PREP Act Background:

The Public Readiness and Emergency Preparedness Act ("PREP Act") is codified at 42 U.S.C. §§ 247d-6d and 247d-6e. "Congress enacted the PREP Act in 2005 '[t]o encourage the expeditious development and deployment of medical countermeasures during a public health emergency' by allowing the HHS Secretary 'to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines.'" *Cannon v. Watermark Retirement Communities, Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022) (citations omitted).  The PREP Act "provides for immunity from federal and state law claims relating to the administration of certain medical countermeasures during a declared public health emergency."  *Id.* at 138.  "The Act lies dormant until invoked by the Secretary of the Department of Health and Human Services ('HHS')."  *Estate of Maglioli v. Alliance HC holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021).

Pursuant to his authority under the PREP Act, in a declaration effective February 4, 2020, the HHS Secretary declared COVID-19 "a

public health emergency" and recommended "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures." 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020) (reproduced at J.A. 52-62).

In the declaration, the Secretary defined "Covered Countermeasures," in relevant part, as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . ." *Id.* at 15202 (Section VI); *see also* 42 U.S.C. § 247d-6d(i)(1) (defining "covered countermeasure"); *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 58 (2d Cir. 2023) (describing events). The Secretary expressly invoked the "[l]iability immunity as prescribed in the PREP Act and conditions stated in this Declaration." *Id.* at 15201. The liability immunity was extended to December 31, 2024. *See* 88 Fed. Reg. 30769, 30775-76 (May 12, 2023).

### 2. **PREP Act Immunity:**

As this Court observed in *Solomon v. St. Joseph Hospital,* "the PREP Act principally creates an immunity scheme," 62 F.4th at 61, which this Court described as providing "broad immunity." *Id.* at 58.

The PREP Act generally provides:

> Subject to the other provisions of this section, **a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure** if a declaration under subsection (b) has been issued with respect to such countermeasure. 42 U.S.C. § 247d-6d(a)(1) (bold added).

The general immunity provision set forth in § 6d(a)(1) is further defined in § 6d(a)(2)(B) (titled "Scope"):

> The immunity under paragraph (1) applies **to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure**, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure. 42 U.S.C. § 247d-6d(a)(2)(B) (bold added).

Thus, "[t]he Act provides immunity only from 'any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure[.]'" *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 849 (6th Cir. 2023). The PREP Act defines "loss" to encompass "any type of loss," including death; physical,

mental, or emotional injury, illness, disability, or condition; and loss or damage to property. 42 U.S.C. § 247d-6d(a)(2)(A).

The "sole exception" to immunity under the PREP Act is an "exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct" that can be "filed and maintained only in the United States District Court for the District of Columbia." 42 U.S.C. §§ 247d-6d(d)(1), (e)(1). "Willful misconduct" is a defined term under the PREP Act. *Id.* § 247d-6d(c); *see id.* § 247d-6d(c)(1)(B) ("shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness"). Before bringing an action under § 247d-6d(d), a plaintiff first must exhaust the remedies available under § 247d-6e(a), the Covered Countermeasure Process Fund. *Id.* § 247d-6e(d)(1).

"The PREP Act, however, does not extinguish all claims that are not based on willful misconduct. The Act separately establishes a Covered Countermeasure Process Fund ('the Fund'), overseen by the Secretary, to compensate individuals for 'covered injuries directly caused by the administration or use of a covered countermeasure.' *Id.* § 247d-6e(a). The statutory scheme therefore ensures that **covered**

16

**persons who are merely negligent in the use of covered countermeasures are immune from suit** while enabling the individuals injured by such negligence to seek compensation through the Fund's administrative process." *Pratt v. JACC Healthcare Center of Norwich LLC*, No. 3:22-cv-566 (VAB), 2022 WL16855976, at *2 (D. Conn. Nov. 10, 2022) (bold added); *see also Cannon,* 45 F.4th at 139 ("Even as correctly applied, PREP Act immunity cuts off forms of relief that might otherwise have been available to people harmed by diagnostics, treatments, or vaccines. Cognizant of that effect, Congress also established a "Covered Countermeasure Process Fund' to compensate for such harms.").

Lastly, the PREP Act includes a preemption provision, which, in relevant part, states that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . is different from, or is in conflict with, any requirement applicable under this section . . . ." 42 U.S.C. § 247d-6d(b)(8)(A). The reach of the PREP Act's preemption provision is the same as its immunity provision. As this Court has explained, "nothing in the PREP Act suggests that

17

Congress was attempting also to eliminate state-law causes of action for non-immunized claims." *Solomon*, 62 F.4th at 62.

Accordingly, the operative question under the PREP Act is whether or not a plaintiff's cause of action is subject to legal immunity under the Act. In the case at bar, the answer to this question is "yes."

**B.** **Dr. Kory Is Entitled To PREP Act Immunity "From Suit And Liability" For His Treatment Of Mr. Waters For COVID-19.**

**1.** **Dr. Kory is a "covered person" under the PREP Act's immunity provision.**

As noted above, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." § 247d-6d(a)(1). Thus, to be entitled to the "broad immunity" under the PREP Act, *Solomon*, 62 F.4th at 58, Dr. Kory must be a "covered person" within the meaning of the statute. In ruling on Defendant's motion to dismiss, the district court assumed that Dr. Kory is a covered person under the PREP Act. J.A. 103. He is.

The PREP Act defines "covered person," in relevant part, to include "a qualified person who prescribed, administered, or dispensed such countermeasure." 42 U.S.C. § 247d-6d(i)(2)(B)(iv). A "qualified person," in turn, is defined, in relevant part, to include "a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." *Id.* § 6d(i)(8)(A).

Although Dr. Kory is not licensed to practice medicine in Connecticut, J.A. 75 (Am. Compl. ¶ 29.b), at all times relevant to this case he was licensed and in good standing in Wisconsin and New York. J.A. 63 (Kory Decl. ¶¶ 5-6). As such, he was authorized under Connecticut law to provide medical treatment to Mr. Waters in this case.

Specifically, Connecticut General Statute § 20-9 ("Who may practice medicine or surgery") provides that the general prohibition on practicing medicine in Connecticut without a license does <u>not</u> apply to:

> [a]ny physician or surgeon residing out of this state who holds a current license in good standing in another state and who is employed to come into this state to treat,

operate or prescribe for any injury, deformity, ailment or disease from which the person who employed such physician, or the person on behalf of whom such physician is employed, is suffering at the time when such nonresident physician or surgeon is so employed, provided such physician or surgeon may practice in this state without a Connecticut license for a period not to exceed thirty consecutive days. C.G.S. § 20-9(b)(5).[2]

Thus, because Dr. Kory was employed by Mr. Waters or his family to treat Mr. Waters for COVID-19, which Mr. Waters was suffering from at the time, Dr. Kory was authorized to practice in Connecticut on a temporary basis and to "treat" and "prescribe" medicines to Mr. Waters for his COVID-19.

It is undisputed that Dr. Kory was employed to provide medical treatment to Mr. Waters for his COVID-19 illness.[3] The Amended Complaint specifically alleges (J.A. 72) that "[a]t all relevant times, Dr. Kory was serving as Mr. Waters's physician" (¶ 4); "[a]t all relevant

---

[2] This statutory section does not appear to have been interpreted by the courts. A Westlaw search for "20-9(b)(5)" in the Connecticut (State & Federal) and 2nd Circuit databases (performed March 26, 2025) returns no cases and the Connecticut General Statutes Annotated has no case notes for this section (only three Attorney General opinions that are between 83 and 100 years old and not available on Westlaw).

[3] Black's Law Dictionary (12th Ed. 2024) defines "employ" as "1. To make use of. 2. To hire. 3. To use as an agent or substitute in transacting business. 4. To commission and entrust with the performance of certain acts or functions or with the management of one's affairs."

times, Dr. Kory provided medical care to Mr. Waters" (¶ 5); and "[a]s a result of the COVID-19 diagnosis and symptoms in early December, Mr. Waters or his family reached out to Dr. Kory, who established care for Mr. Waters on 12/5/21" (¶ 11). The fact that Dr. Kory may have been engaged by Mr. Waters' family does not disqualify Dr. Kory from practicing medicine in Connecticut pursuant to C.G.S. § 20-9(b)(5), which expressly envisions that an out-of-state physician may be employed "on behalf of" the person needing treatment. Here, it is undisputed that Dr. Kory was employed on behalf of Mr. Waters.

Under C.G.S. § 20-9(b)(5), an out-of-state physician may practice medicine in Connecticut "for a period not to exceed thirty consecutive days." Dr. Kory did not exceed this time limitation. The Amended Complaint alleges (J.A. 72-74) that Dr. Kory "established care for Mr. Waters on 12/5/21" (¶ 11), that Dr. Kory prescribed medicines to Mr. Waters on December 6, 2021 (¶ 13) and December 18, 2021 (¶ 18), that Mr. Waters' daughter called Dr. Kory on December 29, 2021, to report Mr. Waters' worsening abdominal pain (¶ 24), and that on December 30, 2021, Mr. Waters was taken by ambulance to Norwalk Hospital (¶ 25), where he remained until he died on January 12, 2022

21

(¶ 28). According to the allegations in the Amended Complaint, therefore, Dr. Kory had no involvement with Mr. Waters' medical care after December 29, 2021, which was less than 30 days after he first started treating Mr. Waters for his COVID-19 illness.

Thus, when he was treating Mr. Waters, Dr. Kory met the requirements for lawfully practicing medicine in Connecticut pursuant to C.G.S. § 20-9(b)(5). Accordingly, Dr. Kory was a "qualified person" and, therefore, a "covered person" under the PREP Act.

### 2. Dr. Kory prescribed "covered countermeasures" to Mr. Waters.

The immunity provided by the PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." § 247d-6d(a)(2)(B). In the case at bar, Plaintiff alleges that Mr. Waters was injured and ultimately died due to a perforated duodenal ulcer that was caused by the high dose corticosteroids prescribed by Dr. Kory to treat Mr. Waters for his COVID-19. The corticosteroids prescribed by Dr. Kory to treat Mr. Waters' COVID-19 – indeed, all of the medicines he prescribed to Mr. Waters – constituted "covered countermeasures" within the

22

meaning of the PREP Act.  In ruling on Defendant's motion to dismiss, the district court assumed that prednisone is a covered countermeasure under the PREP Act.  J.A. 103.  It is.

There is a common misconception that the term "covered countermeasure" only applies to COVID-19 vaccines and other medicines specifically designed to treat COVID-19.  Not so.  As noted above, when the HHS Secretary issued his PREP Act declaration for COVID-19, he defined "covered countermeasures," in relevant part, as "any antiviral, **any other drug**, any biologic, any diagnostic, any other device, or any vaccine **used** to **treat**, diagnose, cure, prevent, or mitigate **COVID-19** . . . ."  85 Fed. Reg. at 15202 (Section VI) (bold added); *see Solomon,* 62 F.4th at 58 (describing HHS Secretary's COVID-19 declaration and definition of covered countermeasures); *Hampton v. California*, 83 F.4th 754, 762-63 (9th Cir. 2023) ("The Secretary went on to define 'covered countermeasures' about as broadly as the Act permits, encompassing 'any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19.'").

Thus, a "covered countermeasure" within the meaning of the PREP Act is <u>any</u> medicine <u>used</u> to treat, cure, prevent, or mitigate COVID-19.

In the case at bar, all of the medicines that Dr. Kory prescribed to Mr. Waters – ivermectin, prednisone, spironolactone, and dutasteride, J.A. 73-74 (Am. Compl. ¶¶ 13, 18) – were used to treat, mitigate, and cure Mr. Waters' COVID-19.  J.A. 64 (Kory Decl. ¶ 11).  Indeed, treating Mr. Waters' COVID-19 illness was the reason Dr. Kory was engaged by Mr. Waters' or his family and the reason he prescribed these medicines to Mr. Waters.  Accordingly, all of these medicines – including the prednisone singled out for criticism by Plaintiff and his experts – constituted "covered countermeasures" under the PREP Act.

### 3. Plaintiff alleges a "causal relationship" between Mr. Waters' injury and death and his use of the covered countermeasures.

The immunity provided by the PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure."  § 247d-6d(a)(2)(B); *see also Hampton*, 83 F.4th at 764 ("At the very least, then, for PREP Act immunity to apply, the underlying use or administration of a covered

countermeasure must have played some role in bringing about or contributing to the plaintiff's injury.") (footnote omitted). This is the situation here.

In the case at bar, Plaintiff's theory of liability is clear:

As alleged in the Amended Complaint: "Dr. Kory prescribed an unreasonably high dose of Prednisone, and did so without proper consideration for gastrointestinal protection" (¶ 29.c); "Dr. Kory did not prescribe Mr. Waters a gastrointestinal prophylaxis with a proton pump inhibitor or H2 blocker to counteract the well-known risk of developing peptic ulcer disease through a protected course of high dose corticosteroids, which was a particularly high risk in this elderly and ill patient who was taking Eliquis, an anticoagulant" (¶ 29.d); "Dr. Kory did not explain to Mr. Waters the risks associated with the protracted and high dose course of corticosteroids that he prescribed" (¶ 32); "Dr. Kory failed to explain to Mr. Waters the potentially deadly risk of a patient in Mr. Waters's position taking a protracted and high dose course of corticosteroids, while also taking an anticoagulant such as Eliquis, as well as non-steroidal anti-inflammatory drugs (NSAIDs) such as aspirin and ibuprofen" (¶ 33).

Plaintiff's expert declaration (Am. Compl., Exh. B) states: "By prescribing high dose corticosteroids to this elderly man without consideration of GI protection, Dr. Kory violated the standard of care to a reasonable degree of medical certainty, by causing a large duodenal ulcer which ultimately led to Mr. Waters' untimely death." J.A. 90 (Expert Decl. at 3).

Plaintiff's expert letter (Am. Compl., Exh. C) likewise states: "The provision of high dose steroids in acutely ill patients is a known risk factor for the development of peptic ulcer disease. The standard of care mandates gastrointestinal prophylaxis with a proton pump inhibitor or H2 blocker in this setting. . . . The failure to provide Mr. Waters with a gastrointestinal prophylaxis with a proton pump inhibitor or H2 blocker, when Dr. Kory prescribed high dose steroids, was a substantial factor in Mr. Waters' development and perforation of the large duodenal ulcer, which ultimately led to his death." J.A. 93-94 (Expert Letter ¶¶ 5, 8).

In sum, Plaintiff alleges that Mr. Waters was injured and ultimately died due to a perforated duodenal ulcer that was caused by the high dose corticosteroids prescribed by Dr. Kory to treat Mr. Waters

for his COVID-19 illness, in conjunction with which Dr. Kory allegedly failed to include a gastrointestinal prophylaxis. This is a straightforward allegation of medical malpractice in the treatment of COVID-19 illness, for which Dr. Kory is entitled to legal immunity under the PREP Act.

Based on the allegations in the Amended Complaint, the requisite "causal relationship" between Plaintiff's "claim for loss" and the "use by [Mr. Waters] of a covered countermeasure" exists in this case. § 247d-6d(a)(2)(B) (J.A. 37).

The term "causal relationship" is not defined in the PREP Act, but should be understood to require a showing of "[c]ausation in fact – *i.e.*, proof that the defendant's conduct did in fact cause the plaintiff's injury – [which] is a standard requirement of any tort claim." *Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 570 U.S. 338, 346 (2013) (Title VII case). This "but for" causation standard is "textbook tort law" and is "the background against which Congress legislate[s] . . . and these are the default rules it is presumed to have incorporated, absent an indication to the contrary in the statute itself." *Id.* at 347. *See also*

27

*Burrage v. United States,* 571 U.S. 204, 211 (2014) ("This but-for requirement is part of the common understanding of cause.").

In the case at bar, assuming the truth of Plaintiff's allegations, the Amended Complaint (including the incorporated expert statements) explicitly alleges that Dr. Kory's prescription of high dose corticosteroids to Mr. Waters was a but-for cause of Mr. Waters developing the large duodenal ulcer that perforated and ultimately led to his death. The plain language of the PREP Act's immunity provisions, therefore, bar Plaintiff's claims against Dr. Kory.

Significantly, **nothing in the PREP Act provides that statutory immunity only applies where the covered countermeasure is the <u>sole</u> cause of the plaintiff's claim for loss.** The statutory text cannot be construed so narrowly. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) ("when the statute's language is plain, the sole function of the courts – at least where disposition required by the text is not absurd – is to enforce it according to its terms").

Here, the general immunity provision § 247d-6d(a)(1) uses very broad causation language – "caused by, arising out of, relating to, or

resulting from" – and the scope of immunity subsection § 247d-6d(a)(2)(B) simply requires "a causal relationship." Neither of these provisions indicates that Congress intended to restrict the PREP Act's otherwise sweeping immunity coverage to cases in which the covered countermeasure was the <u>sole</u> cause of the plaintiff's injuries. Rather, the statutory language simply requires that the covered countermeasure be <u>one</u> but-for cause of the plaintiff's claim for loss. *See Bostock v. Clayton County, Georgia,* 590 U.S. 644, 656 (2020) (Title VII case) ("Often, events have multiple but-for causes.").

This is the crux of the district court's error below. The district court focused on Plaintiff's allegation that Dr. Kory failed to prescribe a gastrointestinal prophylaxis along with the high dose corticosteroids. The district court reasoned that this was a "distinct and independent cause" of Mr. Waters' death falling outside the scope of the PREP Act (relying on case law holding that a *failure* to take action does not trigger PREP Act immunity). J.A. 103-105. Even assuming that the failure to prescribe a gastrointestinal prophylaxis was one but-for cause of Mr. Waters' death, it nevertheless is the case that the high dose corticosteroids themselves were a but-for cause of Mr. Waters' death –

indeed, according to the Amended Complaint, they were the direct cause of Mr. Waters' duodenal ulcer, the harsh effects of which the gastrointestinal prophylaxis was intended to mitigate.[4]

Consequently, the district court's focus on the lack of gastrointestinal prophylaxis misses the mark. Based on the allegations in the Amended Complaint, the high dose corticosteroids (a covered countermeasure) was a but-for cause of (has a causal relationship with) Mr. Waters' injuries and death (claim for loss). Such a claim falls squarely within the scope of immunity under the PREP Act § 247d-6d(a)(2)(B).

Furthermore, far from being a "distinct and independent cause," the alleged lack of gastrointestinal prophylaxis clearly "relat[es] to . . . the use by [Mr. Waters] of a covered countermeasure." § 247d-6d(a)(1). *See Coventry Health Care of Missouri, Inc. v. Nevils,* 581 U.S. 87, 95-96 (2017) (noting that phrase "relate to" has "expansive" meaning). Even if Plaintiff's claim for loss is defined as being caused by the lack of

---

[4] This distinguishes the case at bar from *Mills v. Hartford Healthcare Corp.,* 347 Conn. 524 (2023), relied upon by the district court below, because in *Mills* there was no allegation that the provision of the COVID-19 test (the covered countermeasure in that case) caused any harm to the plaintiff. The district court's analogy between *Mills* and the case at bar, J.A. 104, thus was factually and legally incorrect.

gastrointestinal prophylaxis, it still *relates to* the use by Mr. Waters of the high dose corticosteroids, a covered countermeasure. The "chain of events" in this case "cannot be separated from the administration of a covered countermeasure" – the high dose corticosteroids.[5]

The alleged mechanism of harm in this case is the use of high dose corticosteroids, which Plaintiff repeatedly alleges caused Mr. Waters' perforated duodenal ulcer. The alleged lack of gastrointestinal prophylaxis, standing alone, did not cause Mr. Waters' injuries or death. Rather, Plaintiff argues that the harmful effects *of the high dose corticosteroids* should have been ameliorated *by including* a gastrointestinal prophylaxis in Dr. Kory's treatment regimen – which is an allegation of negligence directly related to the use of the corticosteroids, thus falling squarely within the scope of immunity granted by the PREP Act. *See M.T. ex rel. M.K. v. Walmart Stores, Inc.*, 528 P.3d 1067, 1078 (Kan. App. 2023) ("Negligence claims – including

---

[5] *See Ashley v. Anonymous Physician 1,* No. 23A-CT-2849, 245 N.E.3d 658, at *4 (Ind. Ct. of App. Sept. 11, 2024) (unpub.) (holding PREP Act barred plaintiff's negligence claim in connection with use of ventilator for COVID-19 patient); *Cowen v. Walgreen Co.,* No. 22-CV-157-TCK, 2022 WL 17640208, at *3 (N.D. Okla. Dec. 13, 2022) (holding PREP Act barred plaintiff's claim for administering COVID-19 vaccine instead of flu vaccine); *Storment v. Walgreen Co.,* No. 21-CV-898-MIS, 2022 WL 2966607, at *3 (D.N.M. July 27, 2022) (holding PREP Act barred plaintiff's claim after she fell in parking lot after receiving COVID-19 vaccine).

those of action and those of inaction – are covered by the PREP Act when they are causally related to the administration or use of a covered countermeasure.").

No matter how the claim is construed, the bottom line is that Plaintiff himself has alleged that the high dose corticosteroids prescribed by Dr. Kory were a but-for cause of Mr. Waters' injury and death.

Accordingly, Plaintiff has alleged a causal relationship between his claim for loss and the use by Mr. Waters of a covered countermeasure.

### 4. Dr. Kory is entitled to PREP Act immunity "from suit and liability" in this case.

The application of the PREP Act to the facts of this case is straightforward. To be entitled to PREP Act immunity for his treatment of Mr. Waters for COVID-19, (1) Dr. Kory must be a "covered person," (2) who prescribed a "covered countermeasure" to Mr. Waters, which (3) "has a causal relationship" with Plaintiff's claim for loss. *See* 42 U.S.C. §§ 247d-6d(a)(1), (a)(2)(B). As demonstrated above, Defendant satisfies each required element for immunity under the statute.

Consequently, Dr. Kory is entitled to immunity "from suit and liability" for his treatment of Mr. Waters, *id.* § 6d(a)(1), and Plaintiff's Amended Complaint should have been dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, the defendant-appellant requests that this Court issue an order reversing the district court's Memorandum of Decision entered January 2, 2025, with respect to the denial of Defendant's motion to dismiss Counts I and Counts II of the Amended Complaint. The defendant-appellant also requests that the Court award him the costs of this appeal.

Dated: March 27, 2025

> Respectfully submitted,
>
> /s/ *Steven M. Warshawsky*

By: _____

> STEVEN M. WARSHAWSKY
> The Warshawsky Law Firm
>
> *Attorney for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## TYPEFACE REQUIREMENTS, AND
## TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d) because this brief has been prepared using Microsoft Word 2007 with Century Schoolbook 14-point font (12-pont font for footnotes) and contains no more than 6,300 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

March 27, 2025

/s/ *Steven M. Warshawsky*

_____

STEVEN M. WARSHAWSKY
The Warshawsky Law Firm

*Attorney for Defendant-Appellant*